JS 44 (Rev 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ROBERT BATES

**(b)** County of Residence of First Listed Plaintiff    Honolulu
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

## DEFENDANTS

Comcast Corporation; Comcast Cable Communications Management, LLC, and Comcast (CC) of Willow Grove

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U S Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U S Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U S Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer w/Disabilities - Other | **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other [ ] 550 Civil Rights [ ] 555 Prison Condition [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 462 Naturalization Application [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. § 12101, et seq. ("ADA"); 29 U.S.C. § 2601, et seq. ("FMLA"); 43 P.S. § 951, et seq. ("PHRA"); Phila. Code § 9-1101, et seq. ("PFPO").
Brief description of cause:
Plaintiff was discriminated and retaliated against because of his disability

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE      DOCKET NUMBER

DATE
3/2/2022

SIGNATURE OF ATTORNEY OF RECORD
*Katherine C. Oeltjen*

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

| | | |
|---|---|---|
| Robert Bates | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Comcast Corporation, et al. | : | |
| | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.         ( X )

| | | |
|---|---|---|
| 3/2/2022 | *Kathein C. Oeltjen* | Plaintiff, Robert Bates |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-565-2859 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Kaneohe, HI 96755 _____

Address of Defendant: _____ One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐ No ☑

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐ No ☑

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐ No ☑

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ⦿ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/02/2022          /s/ Katherine C. Oeltjen          318037

                                  *Attorney-at-Law / Pro Se Plaintiff*                   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

| A. | Federal Question Cases: | B. | Diversity Jurisdiction Cases: |
|----|-------------------------|----|-------------------------------|
| ☐ 1. | Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. | Insurance Contract and Other Contracts |
| ☐ 2. | FELA | ☐ 2. | Airplane Personal Injury |
| ☐ 3. | Jones Act-Personal Injury | ☐ 3. | Assault, Defamation |
| ☐ 4. | Antitrust | ☐ 4. | Marine Personal Injury |
| ☐ 5. | Patent | ☐ 5. | Motor Vehicle Personal Injury |
| ☐ 6. | Labor-Management Relations | ☐ 6. | Other Personal Injury *(Please specify)*: _____ |
| ☑ 7. | Civil Rights | ☐ 7. | Products Liability |
| ☐ 8. | Habeas Corpus | ☐ 8. | Products Liability – Asbestos |
| ☐ 9. | Securities Act(s) Cases | ☐ 9. | All other Diversity Cases |
| ☐ 10. | Social Security Review Cases | | *(Please specify)*: _____ |
| ☐ 11. | All other Federal Question Cases | | |
| | *(Please specify)*: _____ | | |

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Katherine C. Oeltjen, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 03/02/2022          /s/ Katherine C. Oeltjen          318037

                                  *Attorney-at-Law / Pro Se Plaintiff*                   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT BATES**<br>Kaneohe, HI 96755<br><br>      Plaintiff,<br><br>   v.<br><br>**COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC; and COMCAST (CC) OF WILLOW GROVE**<br>One Comcast Center<br>1701 JFK Boulevard<br>Philadelphia, PA 19103<br><br>     Defendants. | CIVIL ACTION NO.<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL COMPLAINT

### I. INTRODUCTION

Plaintiff, Robert Bates ("Plaintiff"), brings this action against his former employers, Comcast Corporation, Comcast Cable Communications Management, LLC, and Comcast (CC) of Willow Grove (collectively, "Defendants"), because he was subjected to unlawful discrimination due to his disability and retaliated against because of his complaints of disability discrimination and requests for reasonable accommodations and medical leave, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"). Plaintiff seeks all damages, including economic loss, compensatory, liquidated and punitive damages, his attorney's fees and costs, and all other available relief under applicable federal, state, and local laws as this Court deems

appropriate.

II.   **PARTIES**

1.     Plaintiff, Robert Bates, is an individual and a citizen of Hawaii.  He resides in Kaneohe, Hawaii.

2.     Defendant Comcast Corporation is a Pennsylvania corporation with its principal place of business located at One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103.

3.     Defendant Comcast Cable Communications Management, LLC is organized under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business at One Comcast Center, 1701 JFK Boulevard, Philadelphia, PA 19103.

4.     Defendant Comcast Cable Communications Management, LLC is a wholly owned subsidiary of Defendant Comcast Corporation and they both act as joint employers.

5.     Defendant Comcast (CC) of Willow Grove is a Pennsylvania company and wholly owned subsidiary of Defendant Comcast Cable Communications Management, LLC with a principal place of business at 1701 JFK Boulevard, Philadelphia, PA 19103.

6.     Defendants are engaged in an industry affecting interstate commerce and regularly conduct business in the Commonwealth of Pennsylvania.

7.     At all times material hereto, Defendants collectively constituted Plaintiff's employers under the joint and/or single employer doctrine.  Upon information and belief, Defendants shared common management, had interrelated operations, and collectively controlled Plaintiff's job duties and responsibilities.

8.      At all times material hereto, Plaintiff was an employee of Defendants as defined by the statutes that form the basis of this Action.

9.      At all times material hereto, Defendants were employers as defined by the statues that form the basis of this Action.

10.      At all times material hereto, Defendants acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of their business.

## III.   <u>JURISDICTION AND VENUE</u>

11.      The causes of action that form the bases of this matter arise under the ADA, the FMLA, the PHRA, and the PFPO.

12.      The District Court has jurisdiction over Count I (ADA) and Count II (FMLA) pursuant to 28 U.S.C. § 1331.

13.      The District Court has jurisdiction over all Counts pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is diversity of citizenship as Plaintiff is a citizen of Hawaii and Defendants are citizens of Pennsylvania, respectively.

14.      Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b).

15.      On or about August 10, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein.  The Charge of Discrimination was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). Attached hereto, incorporated

herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

16.     On or about December 3, 2021, the EEOC issued Plaintiff a Notice of Right to Sue regarding his EEOC Charge of Discrimination. Attached hereto, and marked as Exhibit "B" is a true and correct copy of this notice (with personal identifying information redacted).

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

18.     Plaintiff was hired by Defendants in or about August 2008 as Director of Technicians. In or about July 2010 his title changed to Director of Technical Operations.

19.     Amid his strong performance, Plaintiff was promoted to Senior Director of Business Operations.

20.     On or about January 11, 2016, Plaintiff was notified that his job was being eliminated as part of a reduction in force and offered severance.

21.     Before the severance period was over, Defendants recruited Plaintiff back into the organization.

22.     On or about July 25, 2016, Plaintiff began working for Defendants as Director of Business Operations, reporting to Terry Connell ("Connell") (non-disabled), Senior Vice President of Sales.

23.     As Director of Business Operations, Plaintiff was responsible for reporting financial and operational positions related to Business Services Sales.

24.     Throughout his employment, Plaintiff performed his duties in a consistently exemplary manner, receiving strong performance reviews and related bonuses and raises.

25.     In or about the Fall of 2018, Plaintiff disclosed to Connell and other staff members that he has a disability: diabetes with related complications.

26.     Plaintiff further told Connell and others at Defendants that his disability requires him to take insulin and that he was experiencing serious complications from diabetes, including having to administer higher levels of insulin through abdominal injections and experiencing trouble seeing and/or working with spreadsheets during the workday.

27.     Shortly after disclosing his disability to Connell, on or about November 9, 2018, Connell told Plaintiff that Defendants would be undergoing a reorganization, and said that there might be a new "opportunity" for Plaintiff to take a position that would report to Dan Carr ("Carr") (non-disabled).

28.     On or about January 31, 2019, Plaintiff applied to the position reporting to Carr.

29.     The internal recruiter responsible for the position with Carr told Plaintiff that if he received the job, Plaintiff would be transitioning from an "Individual Contributor" to a "People Leader" role and would receive an increase in salary.

30.     On or about March 10, 2019, Plaintiff accepted the position with Carr, but learned that despite the increase in responsibilities, he would not receive any increase in salary.

31.     In March 2019 and throughout the Spring, Plaintiff performed both his new role and his old role without any additional compensation.

32.     At the same time, Carr increasingly expanded the breadth and scope of Plaintiff's new position.

33.     By April 2019, the stress of working two positions had exacerbated conditions associated with Plaintiff's disability: advanced retina disease and high blood pressure.

34.     Plaintiff sought treatment from his physicians as a result of the exacerbation of the conditions identified above.

35.     Plaintiff continued to work two positions without compensation for same or acknowledgment by Defendants.

36.     On or about May 17, 2019, Plaintiff met with a retinal surgeon who diagnosed him with Cystoid Macular Edema and placed his symptoms at 8.5 on a scale of 1-10 (with 10 being the worst prognosis).

37.     The retinal surgeon told Plaintiff he would need injections in both eyes to stabilize his retinas.

38.     On or about June 17, 2019, during a medical visit, Plaintiff's doctor expressed concerned that Plaintiff was experiencing Stage 2 kidney disease, a complication of diabetes and the increasing high blood pressure Plaintiff was experiencing as a result of performing two full-time jobs at once.

39.     On or about June 18, 2019, Plaintiff informed Carr of his disability.

40.     Plaintiff also told Carr that to perform the two full-time jobs, Plaintiff had been working nights, weekends, and holidays and that this had a negative impact on his health amid his disability.

41.     Plaintiff provided Carr with details about his retinal disease, including his need for retinal injections and occasional symptoms of transient blindness and his high blood pressure.

42.     Approximately three weeks later, on or about July 11, 2019, and for the first time, Carr told Plaintiff that his performance was inadequate.

43.     Carr also told Plaintiff that he needed to perform more work and increase his responsibilities.

44.     Before advising Carr of Plaintiff's disability and the related health complications he was experiencing, Carr had never suggested that Plaintiff's performance was "inadequate" or that Plaintiff had failed to meet the expectations.

45.     Between July 11, 2019 and August 20, 2019, Plaintiff continued to experience symptoms of his disability.

46.     For the first time since joining Defendants, Plaintiff took two sick days (accrued and unused under Defendants' policies) to seek treatment.

47.     On August 20, 2019, Carr provided Plaintiff with a letter called "Accountability and Areas for Improvement," dated August 12, 2019.

48.     As Plaintiff had never been presented with any similar letter or warning in years at Defendants and as it was entirely inconsistent with his past performance reviews, Plaintiff emailed Ali Rowley ("Rowley"), Human Resources, and asked for additional information.

49.     Plaintiff further complained to Rowley about the letter and unwarranted criticism on or about August 21, 2019.

50.     On or about August 21, 2019, Plaintiff initiated a request for FMLA coverage/intermittent FMLA coverage for absences necessitated by his disability.

51.     Defendants approved Plaintiff for intermittent FMLA leave so that he could seek treatment for his disability as needed.

52.     At all material times, Plaintiff remained able to perform the essential functions of his job with or without a reasonable accommodation.

53.     On or about September 18, 2019, Carr sent an email to Plaintiff requiring him to provide twenty-four (24) hours' notice to him in advance of any sick day or day covered under his approved intermittent FMLA leave.

54.     Carr's request violated Defendants' policies on the use of sick time and the terms of his approved intermittent FMLA leave.

55.     Plaintiff continued to perform all essential functions of his job despite his disability and need for treatment for same, including without limitation, by working late into the evening and before and after medical appointments, even on days that were supposed to be entirely "off" as sick/FMLA time.

56.     On September 20, 2019, Carr sent an email containing unwarranted criticism and reiterating his requirement that Plaintiff provide him twenty-four (24) hours of any sick/FMLA time.

57.     Plaintiff responded in writing to Carr detailing, among other things, errors in Carr's criticism of his performance.

58.     Plaintiff complained to Carr that he was violating Defendants' sick and FMLA policies in requiring notice for use of sick days/FMLA leave.

59.     On or about October 2, 2019, Carr met with Plaintiff and further criticized Plaintiff's performance.

60.     When Plaintiff tried to provide Carr with information to demonstrate how his criticism of Plaintiff was inaccurate, Carr cut him off.

61.     Plaintiff told Carr that he was feeling harassed.

62.     Carr told Plaintiff that he would involve Human Resources.

63.     On or about October 9, 2019, Plaintiff met with Carr and Amy Masci ("Masci"), Human Resources.   Plaintiff detailed for them the ways in which Carr's prior letters were unwarranted and inaccurate.

64.     Following Plaintiff's complaints to Carr and Masci, Defendants continued to subject Plaintiff to a hostile work environment, including by way of unwarranted criticism; micromanagement; continuous increasing of his job duties, responsibilities and expectations; refusing to appropriately staff his team to ensure that the workload across the team was appropriate; and, other hostile treatment.

65.     Carr continued to interfere with Plaintiff's FMLA rights and intermittent leave needs related to Plaintiff's disability.

66.     On or about October 29, 2019, Plaintiff sent an email complaining of disability discrimination to Carr, Masci, Connell, and Andrew Topping ("Topping"), Vice President, Employee and Labor Relations.

67.     Following that email, Carr's hostile and demeaning treatment of Plaintiff continued.

68.     Plaintiff required additional treatment for his disability as the stress associated with his work conditions worsened his health.

69.     On or about December 9, 2019, Topping and individuals from Defendants' legal department falsely accused Plaintiff of stealing "sensitive revenue data" from Defendants.

70.     Topping pointed to a notice of data transfer from Defendants' internal systems.

71.     Topping failed to acknowledge that the notice was related to Defendants swapping out his work computer for a new one and the related file transfer necessary to ensure that the new computer had all of the same information as the old computer.

72.     Plaintiff understood the above false accusation to be retaliatory for his complaints of disability discrimination and intended to intimidate Plaintiff.

73.     On or about December 13, 2019, Plaintiff met with Stacy Schor ("Schor"), Director of Employee Engagement, and provided further information about the discrimination to which he was being subjected, including in connection with a hostile work environment.

74.     On or about December 18, 2019, Carr and Masci gave Plaintiff a "choice" of accepting a performance improvement plan ("PIP") or being terminated.

75.     If Plaintiff chose termination and signed a release of all legal claims against Defendants, including disability discrimination claims, Plaintiff would receive sixty (60) days of severance in return.

76.     Masci confirmed that there were no other options available to Plaintiff other than termination or accepting an unwarranted PIP.

77.     The stress associated with the "choice" presented to Plaintiff was followed by a spike in his blood pressure and other symptoms related to his disability that required Plaintiff to seek medical treatment.

78.     On or about January 6, 2020, Carr emailed the PIP to Plaintiff.

79.     The PIP contained factual inaccuracies, which Plaintiff highlighted to Carr and Masci during a meeting on January 7, 2020.

80.     On or about January 14, 2020, Plaintiff received an email from Masci confirming that Plaintiff had not stolen any data from Defendants and that Defendants' accusation was false.

81.     On or about January 17, 2020, Carr sent a third version of the PIP, purportedly edited to remove factual inaccuracies.

10

82.     The PIP still contained factual inaccuracies, unwarranted criticism and required that Plaintiff not ever take any sick/intermittent FMLA leave.

83.     On or about January 23, 2020, Plaintiff emailed Defendants again complaining of disability discrimination and asking Defendants to engage in the interactive process with him regarding several outstanding requests for a reasonable accommodation.

84.     Plaintiff made requests for reasonable accommodations as follows:

    a.  Breaks in the day to test Plaintiff's glucose;

    b.  A private area in the office to test Plaintiff's glucose and perform other medical tests as necessary;

    c.  A large computer monitor to address Plaintiff's vision-related issues; and

    d.  Periods of rest throughout the day and the ability to go for short walks.

85.     Plaintiff performed to the PIP, sending multiple deliverables to Carr who did not meet with him to provide meaningful  or substantive feedback on Plaintiff's performance to the PIP.

86.     On or about March 5, 2020, Defendants informed Plaintiff he would not receive any bonus or salary increase.  Typically, Plaintiff received an approximately $15,000 bonus and an approximately 3% salary increase.

87.     On or about March 9, 2020, Plaintiff received a "Does Not Meet" rating for the prior year, which was unwarranted.

88.     On or about March 18, 2020, Defendants told Plaintiff it would "extend" his PIP amid COVID-19.  But, instead of "extending" the existing PIP, Carr gave Plaintiff a fourth version of a PIP that continued to change his job duties expectations.

89.     Plaintiff again complained of disability discrimination to Masci and Schor.

90.     Upon information and belief, Defendants never engaged in any meaningful investigation of Plaintiff's complaints.

91.     Between April 21, 2020 and April 29, 2020, as the hostile work environment to which Plaintiff was being subjected continued and as his requests for reasonable accommodations were ignored, Plaintiff complained of disability discrimination to Defendants and provided the basis for his complaints.

92.     On or about May 6, 2020, Carr and Masci told Plaintiff he was terminated, effective immediately.

93.     The only reason given to Plaintiff was that he had not completed his PIP.

94.     The stated reason is false and pretextual.

95.     Plaintiff asked Masci if Defendants would consider him for any open position elsewhere in the organization, to which Masci responded "no."

96.     Upon information and belief, Plaintiff's job duties remained within Defendants' organization and were performed by individuals who were not disabled, had not recently required medical leave or reasonable accommodations and who had not complained of disability discrimination.

97.     Plaintiff's disability, including his record of disability and Defendants' regarding him as having a disability, was a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including without limitation in connection with: subjecting Plaintiff to a hostile work environment; falsely accusing Plaintiff of stealing Defendants' data; placing Plaintiff on a PIP; and terminating Plaintiff.

98.     Plaintiff's complaints of disability discrimination and interference with his FMLA rights were motivating and/or determinative factor(s) in connection with Defendants' retaliatory

treatment of Plaintiff, including without limitation in connection with: subjecting Plaintiff to a hostile work environment; falsely accusing Plaintiff of stealing Defendants data; placing Plaintiff on a PIP; and terminating Plaintiff.

99.    Defendants failed to engage in the interactive process with Plaintiff regarding his requests for accommodation.

100.    Plaintiff's requests for FMLA leave and reasonable accommodations were a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff including in connection with:  subjecting Plaintiff to a hostile work environment; falsely accusing Plaintiff of stealing Defendants' data; placing Plaintiff on a PIP; and terminating Plaintiff.

101.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

102.    Defendants retaliated against Plaintiff for taking FMLA leave and interfered with his rights to additional FMLA leave as necessitated by his disability.

103.    As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits including without limitation loss of health benefits and loss of Short and Long Term Disability insurance, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

104.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

105.    No previous application has been made for the relief requested herein.

## COUNT I
## (VIOLATION OF ADA)

106.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

107.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

108.    Defendants acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

109.    As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

110.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

111.    No previous application has been made for the relief requested herein.

## COUNT II
## (VIOLATION OF THE FMLA)

112.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

113.    By committing the foregoing acts against Plaintiff, Defendants have violated the FMLA.

114.    Defendants' conduct was retaliatory and/or interfered with, restrained and/or denied the exercise of Plaintiff's rights to FMLA leave.

115.    Said violations were willful, not in good faith and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

14

116.    The imposition of liquidated damages is warranted.

117.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

118.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' violations of the FMLA unless this Court grants the relief requested herein.

119.    No previous application has been made for the relief requested herein.

**COUNT III**
**(VIOLATION OF THE PHRA)**

120.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

121.    Defendants, by the above improper and discriminatory and retaliatory acts, have violated the PHRA.

122.    Said violations were intentional and willful.

123.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

124.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

125.    No previous application has been made for the relief requested herein.

## COUNT IV
## (VIOLATION OF THE PFPO)

126.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

127.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PFPO.

128.    Defendants acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

129.    As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

130.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

131.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of ADA;

(b)    declaring the acts and practices complained of herein to be in violation of the FMLA;

(c)    declaring the acts and practices complained of herein to be in violation of the PHRA;

16

(d)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to Plaintiff to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' discriminatory and unlawful conduct;

(h)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(i)     awarding liquidated damages to Plaintiff;

(j)     awarding punitive damages to Plaintiff;

(k)     awarding Plaintiff other such damages as are appropriate under the ADA, the FMLA, the PHRA and the PFPO;

(l)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(m)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:   *Katherine C. Oeltjen*
      KATHERINE C. OELTJEN, ESQ.
      JONATHAN D. GILMAN, ESQ.
      1525 Locust Street, 9th Floor
      Philadelphia, PA 19102
      oeltjen@consolelaw.com (email)
      gilman@consolelaw.com (email)
      (215) 545-7676 (office)
      (215) 565-2852 (fax)

Dated: 3/2/2022                    *Attorneys for Plaintiff Robert Bates*

18

# EXHIBIT A

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | ☐ FEPA<br>X EEOC | |

| STATE OR LOCAL AGENCY:  PHRA |
|---|

| NAME (Indicate Mr., Ms., Mrs.)<br>Robert Bates | HOME TELEPHONE NUMBER (Include Area Code)<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>West Chester, PA 19382 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>Comcast Corporation | NUMBER OF EMPLOYEES<br>500+ | TELEPHONE (Include Area Code)<br>(215) 286-1700 |
|---|---|---|

| STREET ADDRESS<br>1701 John F. Kennedy Blvd. | CITY, STATE AND ZIP<br>Philadelphia, PA 19103 | COUNTY<br>Philadelphia |
|---|---|---|

| CAUSE OF DISCRIMINATION (Check appropriate box(es))<br>☐ Race   ☐ Color   ☐ Sex   ☐ Religion   ☐ National Origin<br>X Retaliation   ☐ Age  X Disability   ☐ Other (Specify) | DATE DISCRIMINATION TOOK PLACE<br>Latest Date: May 6, 2020 |
|---|---|

**I.    THE PARTICULARS ARE:**

**A.  Relevant Work History**

I was hired by Comcast Cable Communications Management LLC ("Comcast" or "Respondent) in or about August, 2008 as Director of Technical Operations. Amid my strong performance, I was promoted to Senior Director Business Operations. On or about January 11, 2016, I was notified that my job was being eliminated as part of a reduction in force and offered severance. However, before the severance period was over, Respondent recruited me back into the organization. On or about July 25, 2016 I began working for Respondent as Director of Business Operation, reporting to Terry Connell ("Connell") (non-disabled), Senior Vice President of Sales. As Director of Business Operations ("Director"), I was responsible for reporting financial and operational positions related to Business Services Sales. Throughout my employment, I performed my duties in a consistently exemplary manner, receiving strong performance reviews and the bonuses and raises associated with same.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | ~~NOTARY - (when necessary for State and Local Requirements)~~<br><br>~~I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief.~~ |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date: 8/10/202~~~ Charging Party (Signature)~~ | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

EEOC Charge of Discrimination
Robert Bates v. Comcast Corporation
Page 2 of 7

B. __Harm Summary__

I believe that Respondent discriminated against because of my disability and retaliated against me for complaining of disability discrimination. Evidence of discriminatory and retaliatory conduct includes, but is not limited to the following:

1. In or about Fall, 2018, I disclosed to Connell and members of my staff that I have a disability: diabetes. I further told Connell and others at Respondent that my disability requires that I take insulin and that I was experiencing serious complications from diabetes, including having to administer higher levels of insulin through abdominal injections and experiencing trouble seeing and/or working with spreadsheets during the work day.

2. Shortly after I disclosed my disability to Connell, on or about November 9, 2018, Connell told me that Respondent would be undergoing a reorganization. Connell told me that there might be an "opportunity" for me to take a position reporting to Dan Carr ("Carr") (non-disabled).

3. On or about January 31, 2019, I applied to the position reporting to Carr.

4. The internal recruiter responsible for the Carr position told me that if I received the job, I would be shifted from an "individual contributor" to a "people leader" and receive an increase in salary.

5. On or about March 10, 2019, I accepted the position with Carr, but learned that despite the increase in responsibilities, I would not receive any increase in salary.

6. From March, 2019 throughout the Spring, I performed both my new role and my old role without any additional compensation. At the same time, Carr increasingly expanded the breadth and scope of my new position.

7. By April, 2019 the stress of working two positions had exacerbated conditions associated with my disability: advanced retina disease and high blood pressure.

8. I sought treatment from my physicians as a result of the exacerbation of the conditions identified above.

9. I continued to work two positions without compensation for same or acknowledgement by Respondent that I was working two full-time positions.

10. On or about May 17, 2019, I saw a retinal surgeon who diagnosed me with Cystoid Macular Edema and placed my symptoms at 8.5 on a scale of 1-10 (with 10 being the worst).

11. The retinal surgeon told me I would need injections in both eyes to stabilize my retinas.

EEOC Charge of Discrimination
Robert Bates v. Comcast Corporation
Page 3 of 7

12. On or about June, 17, 2019, during a medical visit, my doctor expressed concern that I was experiencing Stage 2 kidney disease, a complication of diabetes and the increasing high blood pressure I was experiencing as a result of performing two full time jobs at once.

13. On or about June 19, 2019, I told Carr about my disability.

14. I also told Carr that to perform the two full-time jobs, I had been working nights, weekends, and holidays and that this had had a negative impact on my health amid my disability. I provided Carr with details about my Retinal Disease, including my need for retinal injections and occasional symptoms of transient blindness and my high blood pressure.

15. Approximately three weeks later, on or about July 11, 2019, and for the first time, Carr told me that my performance was inadequate. Carr also told me that I needed to perform more work and increase my responsibilities.

16. Prior to advising Carr of my disability and the related health complications I was experiencing, he had never suggested that my performance was "inadequate" or that I had failed to meet the expectations for the various positions I was performing.

17. Between July 11, 2019 and August 20, 2019, I continued to experience symptoms of my disability. For the first time since joining Comcast, I took two sick days (accrued and unused under Respondent's policies) to seek treatment.

18. On August 20, 2019, Carr gave me a letter called "Accountability and Areas for Improvement" dated August 12, 2019.

19. As I had never been presented with any similar letter or warning in years at Comcast and as it was entirely inconsistent with my past performance reviews, I emailed Ali Rowley ("Rowley"), Human Resources and asked for additional information.

20. I further complained to Rowley about the letter and unwarranted criticism on or about August 21, 2019.

21. On or about August 21, 2019, I initiated a request for FMLA coverage/intermittent FMLA coverage for absences necessitated by my disability.

22. Ultimately, Respondent approved me for intermittent FMLA leave so that I could seek treatment for my disability as needed.

23. At all material times, I remained able to perform the essential functions of my job with or without a reasonable accommodation.

EEOC Charge of Discrimination
Robert Bates v. Comcast Corporation
Page 4 of 7

24. On or about September, 18, 2019, Carr sent an email to me requiring me to provide twenty-four (24) hours' notice to him in advance of any sick day or day covered under my approved intermittent FMLA leave.

25. Carr's request violated Respondent's policies on the use of sick time and the terms of my approved intermittent FMLA leave.

26. I continued to perform all essential functions of my job despite my disability and need for treatment for same, including without limitation, by working late into the evening and before and after medical appointments; even on days that were supposed to be entirely "off" as sick/FMLA time.

27. On September 20, 2019, Carr sent an email containing unwarranted criticism and reiterating his requirement that I provide him twenty-four (24) hours of any sick/FMLA time.

28. I responded in writing to Carr detailing, among other things, errors in his criticism of my performance. I told Carr that he was violating Comcast policy and FMLA policy in requiring notice for use of sick days/FMLA leave.

29. On or about October 2, 2019, Carr met with me and further criticized my performance.

30. When I tried to provide Carr with information to demonstrate his criticism of me was inaccurate, he cut me off.

31. I told Carr that I was feeling harassed.

32. Carr told me he would involve Human Resources.

33. On or about October 9, 2019, I met with Carr and Amy Masci ("Masci"), Human Resources. I detailed for them the ways in which Carr's prior letters were unwarranted and inaccurate.

34. Following my complaints to Carr and Masci, Respondent continued to subject me to a hostile work environment, including by way: of unwarranted criticism; micromanagement; continuous increasing of my job duties, responsibilities and expectations; refusing to appropriately staff my team to ensure that the work load across the team was appropriate; and, otherwise hostile treatment.

35. Carr continued to interfere with my FMLA rights and intermittent leave needs related to my disability.

EEOC Charge of Discrimination
Robert Bates v. Comcast Corporation
Page 5 of 7

36. On or about October 29, 2019, I sent an email complaining of disability discrimination to Carr, Masci, Connell, and Andrew Topping ("Topping") Vice President, Employee and Labor Relations.

37. Following that email, Carr's hostile and demeaning treatment of me continued. I required additional treatment for my disability as the stress associated with my work conditions worsened my health.

38. On or about December 9, 2019, Topping and individuals from Respondent's legal department falsely accused me of stealing "sensitive revenue data" from the company. Topping based his accusation on a notice of data transfer from Respondent's internal systems. Yet, Topping failed to acknowledge that the notice was related to Respondent swapping out my work computer for a new one and the related file transfer necessary to ensure that the new computer had all of the same information as the old computer.

39. I understood the above false accusation to be retaliatory for my complaints of disability discrimination and intended to intimidate me.

40. On or about December 13, 2019, I met with Stacy Schor ("Schor"), Director of Employee Engagement and provided further information about the discrimination to which I was being subjected, including in connection with a hostile work environment.

41. On or about December 18, 2019, Carr and Masci gave me a "choice" of accepting a performance improvement plan or "PIP" or being terminated.

42. If I chose termination and signed a release of all legal claims against Comcast, including disability discrimination claims, I would receive sixty (60) days of severance.

43. Masci confirmed that there were no other options available to me other than termination or accepting an unwarranted PIP.

44. The stress associated with the "choice" presented to me was followed by a spike in my blood pressure and other symptoms related to my disability that required that I seek medical treatment.

45. On or about January 6, 2020, Carr emailed the PIP to me.

46. The PIP contained factual inaccuracies.

47. I highlighted the factual inaccuracies to Carr and Masci during a meeting on January 7, 2020.

EEOC Charge of Discrimination
Robert Bates v. Comcast Corporation
Page 6 of 7

48. On or about January 14, 2020, I received an email from Masci confirming that I had not stolen any data from the company.

49. On or about January 17, 2020, Carr sent a third version of the PIP, purportedly edited to remove factual inaccuracies.

50. The PIP still contained factual inaccuracies, unwarranted criticism and required that I not ever take any sick/intermittent FMLA leave.

51. On or about January 23, 2020, I emailed Respondent again complaining of disability discrimination and asking Respondent to engage in the interactive process with me regarding several outstanding requests for a reasonable accommodation.

52. I made requests for reasonable accommodations as follows: breaks in the day to test my glucose; a private area in the office to test my glucose and perform other medical tests as necessary; a larger computer monitor to address my vision related issues; and periods of rest throughout the day along with the ability to go for short walks.

53. I performed to the PIP, sending multiple deliverables to Carr who did not meet with me for feedback as required by the PIP.

54. On or about March 5, 2020, Respondent informed me I would not receive any bonus or salary increase. Typically, I received an approximately $15,000 bonus and an approximately 3% salary increase.

55. On or about March 9, 2020, I received a "Does Not Meet" rating for the prior year.

56. The rating was unwarranted.

57. On or about March 18, 2020, Respondent told me they would "extend" my PIP amid Covid-19. But, instead of "extending" the existing PIP, Carr gave me a fourth version of a PIP that continued to change my job duties expectations.

58. I again complained of disability discrimination to Masci and Schor.

59. To the best of my knowledge, Respondent never engaged in any meaningful investigation of my complaints.

60. Between April 21, 2020 and April 29, 2020, as the hostile work environment to which I was being subjected continued and as my requests for reasonable accommodations were ignored, I complained of disability discrimination to Respondents and provided the basis for my complaints.

**EEOC Charge of Discrimination**
**Robert Bates v. Comcast Corporation**
**Page 7 of 7**

61. On or about May 6, 2020, Carr and Masci told me I was terminated, effective immediately.

62. The only reason given was that I had not completed my PIP.

63. The stated reason is false and pre-textual.

64. I asked Masci if Respondent would consider me for any open position elsewhere in the organization.

65. Masci told me no.


**C.  Respondent's Stated Reason**
   The Respondent has not provided a legitimate, non-discriminatory reason or the discriminatory and retaliatory treatment detailed above, including in connection with: subjecting me to a hostile work environment; placing me on an unwarranted PIP; denying me a bonus and raise that I had earned; ignoring requests for reasonable accommodations; failing to engage in the interactive process; my termination; and, refusing me to place me into a different position within the organization. The reason for my termination provided by Respondent, is false and pre-textual. Respondent has not provided any reason for the other adverse acts detailed herein.

**D.  Statues and Basis of Allegations**
   I believe that Respondent has discriminated against me in violation of the Americans with Disabilities Act, as amended 42 U.S.C. §12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended 43 P.S. §951, *et. seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Bill No. 130684, Philadelphia §9-1100, *et. seq.* ("PFPO"), *inter alia.*

# EXHIBIT B

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Robert Bates**
REDACTED
**Kaneohe, HI 96744**

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Legal Unit,** | |
| **530-2020-05339** | **Legal Technician** | **(267) 589-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Jamie R. Williamson*

12/03/2021

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

*(Date Issued)*

cc:
**David Brier, Esq.**
**Assistant General Counsel**
**COMCAST CABLE COMMUNICATIONS, INC.**
**One Comcast Center, Legal Department**
**1701 John F Kennedy Boulevard**
**Philadelphia, PA 19103**

**Katherine Oeltjen, Esq.**
**CONSOLE MATTIACCI LAW, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**