IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT BATES** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 22-774 |
| | : | |
| **COMCAST CORPORATION, et al.** | : | |

**McHUGH, J.**                                                                                                    **August 15, 2023**

**MEMORANDUM**

      This is an employment action alleging discrimination and retaliation under the Americans with Disabilities Act. The action was previously stayed by joint stipulation to allow the parties to arbitrate through a company-sponsored program known as Comcast Solutions. That program is administered by JAMS – a dispute resolution organization (DRO). The parties mutually agreed on an arbitrator, but six months later he disclosed that he has acquired a partial ownership interest in JAMS. Plaintiff now contends that the selected arbitrator is no longer neutral, with the result that Comcast now stands in violation of its arbitration agreement, rendering it unenforceable. Comcast responds that challenges to an arbitrator's neutrality cannot be made in federal court until *after* an arbitration award is issued, and that Plaintiff is attempting to recharacterize his claim of bias as one for enforcement of the contract as a strategic ploy to trigger premature judicial review. The weight of authority favors Comcast's position, and I am therefore constrained to deny Plaintiff's motion to vacate the stay.

**I.     Relevant Background**

      In January 2016, Plaintiff Robert Bates, who was working as a Senior Director of Business Operations for Defendant Comcast, was notified that his job was being eliminated as part of a reduction in workforce. Compl. ¶¶ 19-20. After his severance period was over, Comcast recruited

Bates to come back into the organization as Director of Business Operations.  *Id.* ¶¶ 21-22; *see* Pl.'s Ex. 1, ECF 10-3 at 2.  In accepting his new contract, Plaintiff consented to Comcast's mandatory arbitration program called "Comcast Solutions."  *See* Pl.'s Ex. 1, ECF 10-3 at 4.  Comcast Solutions requires that Comcast employees in the Philadelphia area arbitrate their suits with a nationally known DRO, JAMS.  Pl.'s Ex. 2, ECF 10-3 at 26.  The documents governing the administration of the program require that any arbitration adhere to minimum standards of procedural fairness and provide for the selection of a mutually acceptable and neutral arbitrator.  *See id.* at 31, 43.

Plaintiff was fired from his job with Comcast in 2020.  Compl. ¶ 92.  Two years later, he sued Comcast in this Court for unlawful discrimination due to his disability, and for retaliating against him after he complained of that discrimination and sought reasonable accommodations.  Soon thereafter, the parties filed a joint stipulation to stay the action while they pursued private arbitration in accordance with the terms of Comcast Solutions.  ECF 8.  I granted the stay on May 17, 2022.  ECF 9.

Plaintiff filed a Demand for Arbitration with JAMS on June 16, 2022.  *See* Pl.'s Ex. 4, ECF 10-3 at 57.  In accordance with JAMS' "Minimum Standards of Procedural Fairness" and the terms of Comcast Solutions, the parties mutually selected former Magistrate Judge Thomas Rueter to serve as their arbitrator, a judge with vast experience and a reputation for ability and integrity.  Proceedings commenced after JAMS confirmed the appointment of Arbitrator Rueter.  *See* Pl.'s Ex. 5, ECF 10-4 at 2.

Then, on January 11, 2023, Arbitrator Rueter disclosed to the parties in a letter that, as of January 6, he had become a part-owner in JAMS.  *See* Pl.'s Ex. 8, ECF 10-4 at 31.  The letter noted that "[n]o shareholder's distribution exceeds 0.1% of JAMS total revenue in a given year" but

offered no specific quantification. *Id.* The letter further stated that "[s]hareholders are not informed about the extent to which their profit distribution may be impacted by any particular client . . . and shareholders do not earn credit for the creation or retention of customer relationships." *Id.*

One month later, Plaintiff sent a letter to Arbitrator Rueter requesting that he recuse himself under JAMS' Arbitration Rule 27(b).[1] Pl.'s Ex. 9, ECF 10-4 at 33. Comcast opposed Plaintiff's request. Pl's Ex. 11, ECF 10-4 at 39. The JAMS National Arbitration Committee ("NAC") reviewed the request under JAMS Employment Arbitration Rules 1(c)[2] and 15(i)[3] and rejected it. *See* Pl.'s Ex. 13, ECF 10-4 at 49. JAMS reasoned that "the amount of cases Comcast has arbitrated with JAMS over the past five years represents a small fraction of the cases which JAMS administers," and that Arbitrator Rueter has "no insight into the revenue gained from a particular client." *Id.* It further stated that "[t]he objection comes after the arbitrator has made various rulings and replacement at this time in the proceedings could bear significant prejudice on the parties." *Id.* at 50. Finally, the NAC advised that "given Claimant's request, Judge Rueter will refrain from accepting any new matters with Comcast while this arbitration is pending." *Id.*

---

[1] Rule 27(b) states: "If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge should be made promptly, in writing to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator."

[2] Rule 1(c) states: "The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees."

[3] Rule 15(i) states: "At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final."

In response, Plaintiff requested a stay of the arbitration for thirty days so that he could evaluate his options for "legal recourse in connection with [the] Recusal denial." Pl.'s Ex. 14, ECF 10-4 at 52. Comcast again opposed Bates' request and, a few days later, Judge Rueter denied it. Pl.'s Ex. 15, ECF 10-4 at 54; Pl.'s Ex. 16, ECF 10-4 at 56.

Finally, Plaintiff wrote to the JAMS NAC to give notice that he would be contesting the enforceability of the underlying arbitration clause in light of Judge Rueter's disclosure, and request that JAMS defer administering the arbitration while he sought a judicial ruling on the matter. Pl.'s Ex. 17, ECF 10-4 at 58. Plaintiff relied on JAMS' Minimum Standard C, which states:

> If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS will, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue.

*Id.* at 61; Pl.'s Ex. 5, ECF 10-3 at 9. Comcast responded in opposition, Pl.'s Ex. 19, ECF 10-4 at 67, and JAMS denied the request. Pl.'s Ex. 20, ECF 10-4 at 99. Plaintiff then filed the pending motion to vacate the stay and proceed in this Court.

**II.   Discussion**

    **A.  Plaintiff's challenge to the arbitrator's neutrality is not ripe until after an award is issued.**

The Federal Arbitration Act ("FAA") does not contain any provision that provides for pre-award judicial review. *See Savers Prop. and Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 717 (6th Cir. 2014) (explaining that, prior to the issuance of an award, "the laws are largely silent with respect to judicial review"). Courts have interpreted the absence of such a provision "to preclude the interlocutory review of arbitration proceedings and decisions." *Id.* at 718. Section 10 of the FAA provides a pathway for challenging the impartiality of an arbitrator, but only *after* an award has been issued. *See* 9 U.S.C. § 10(a)(2) (allowing for vacatur of arbitration

4

award "where there was evident partiality or corruption in the arbitrators"); *John Hancock Life Ins. Co. (U.S.A.) v. Emps. Reassurance Corp.*, No. 97-1956, 2016 WL 3460316, at *3 (D. Mass. June 21, 2016) ("[B]ased upon the express terms of the FAA, challenges to a party-appointed arbitrator, such as allegations of bias, are properly considered by courts only at the conclusion of arbitration.").

Although the Third Circuit has not yet addressed this issue, other circuit courts have held that judicial review of challenges to an arbitrator's partiality is not proper until after a final award is issued. *See, e.g., Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 490 (5th Cir. 2002) ("[E]ven where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award."); *Smith v. Am. Arb. Ass'n, Inc.*, 233 F.3d 502, 506 (7th Cir. 2000) ("The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered."); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n.4 (2d Cir. 1980) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."); *Ins. Co. N. Am. V. Pennant Ins. Co.*, No. 97-MC-154, 1998 WL 103305, at *2 (E.D. Pa. Feb. 18, 1998) (Van Antwerpen, J.) (quoting *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997)) (same).

In limited circumstances, courts may intervene in arbitration proceedings prior to the issuance of an award if the arbitration agreement is "invalid under general contract principles." *Aviall,* 110 F.3d at 896. But courts have exercised caution in approaching such claims to prevent parties from strategically packaging their challenge as one of contract enforcement, preserving the general policy of deferring judicial intervention until after an award is issued. *See Gulf Guar. Life Ins. Co.*, 304 F.3d at 491 ("[A] court may not entertain disputes over the qualifications of an

5

arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue, unless such claim raises concerns rising to the level that the very validity of the agreement be at issue."); *Savers Prop. and Cas. Ins. Co.*, 748 F.3d at 720 (same); *see also Ins. Co. of N. Am.*, 1998 WL 103305, at *2 (warning that pre- or mid-arbitration intervention "could have the disadvantage of enmeshing district courts in endless peripheral litigation and ultimately vitiate the very purpose for which arbitration was created").

In the few instances where courts have seen fit to intervene before an award is issued, they have focused on problems related to the formation of contract. For example, in *Masthead MAC Drilling Corp. v. Fleck*, 549 F. Supp. 854, 856 (S.D.N.Y. 1982), the plaintiff claimed that he was fraudulently induced into entering an arbitration contract when the defendant concealed that the contractually designated arbitrator was actually the defendant's business associate. The District Court, with the consent of both parties, cured the contract defect by designating a different and neutral arbitrator. *Id.* Likewise, in *Erving v. Virginia Squires Basketball Club*, 349 F. Supp. 716, 718 (E.D.N.Y. 1972), the designated arbitrator was the "Commissioner of the American Basketball Association." But when the parties went to arbitrate, a new commissioner had been appointed, and that person was also a partner at the law firm representing the defendant. *Id.* at 719. Again, the District Court reformed the explicit language of the contract by designating a different, neutral arbitrator. *Id.* at 719-20; *compare Aviall*, 119 F.3d at 896 (rejecting Plaintiff's claim when it "in no way point[ed] to any infirmity in the contracting process").

Here, Plaintiff takes no issue with the plain language of the agreement or the contracting process. Plaintiff argues instead that *after* mutually selecting Judge Rueter and the commencement of the arbitration process, circumstances changed such that he was no longer sufficiently neutral, giving rise to a breach of one of the conditions of the contract under which arbitration proceeds

6

through Comcast Solutions. But Plaintiff's complaint that Judge Rueter is not sufficiently neutral under the otherwise acceptable language of the contract does not rise to the level of irregularity which courts have deemed sufficient to intervene mid-arbitration. Here, Plaintiff certainly does not assert "fraud in the inducement or some other infirmity in the contracting process . . . that could serve to invalidate the agreement to arbitrate." *Savers Prop. and Cas. Ins. Co.*, 748 F.3d at 720; *see Gulf Guar. Life Ins. Co.*, 304 F.3d at 491 (explaining that a claim merely questioning the independence of an arbitrator does not "constitute a claim 'invalidating the contract' or a claim of some type of fraud . . . that would suggest that the validity of the agreement to arbitrate is under attack under general contract principles."). And even where claims of impartiality have been recast as claims of enforcement, as Plaintiff has attempted here, courts have not hesitated to conclude that a party's complaint "is not the type of challenge that the district court [is] authorized to adjudicate pursuant to the FAA prior to issuance of an arbitral award." *Gulf Guar. Life Ins. Co.*, 304 F.3d at 492.

Turning to the disclosure giving rise to this challenge, it is far from obvious that such a modest ownership interest would be enough to undermine Judge Rueter's neutrality. Although I have previously identified an inherent structural risk of bias in cases with repeat arbitrator-employer relationships, I simultaneously acknowledged that I am bound by federal policies favoring arbitration.[4] *See Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 543, 548-49 (E.D. Pa. 2018) (McHugh, J.). And, in this case, it is not clear that Arbitrator Rueter's newfound status as a JAMS part-owner has any *additional* impact on the risks presented by repeat-employer

---

[4] Regardless of forum, plaintiffs in employment cases face an uphill battle. *See* Kevin M. Clermont & Stewart J. Schwab, *Employment Discrimination Plaintiffs in Federal Court: From Bad to Worse?*, 3 Harv. L. & Pol'y Rev. 103, 128 (2009) ("Over the period of 1979-2006 in federal court, the plaintiff win rate for jobs cases (15%) was much lower than that for non-jobs cases (51%). . . . [P]erhaps [this] results from hurdles being placed before employment discrimination plaintiffs.").

arbitrations.[5] Arbitrator Rueter's notice and JAMS' review of Plaintiff's recusal request both explain that shareholder distributions do not exceed 0.1% of JAMS total revenue. Data available on JAMS' website further demonstrates that Comcast arbitrations amount to less than approximately 0.006% of all JAMS' annual arbitrations. ECF 13 at 20. No mid-arbitration intervention is warranted on such a basis alone.[6] *Cf. Hooters of Am., Inc. v. Philips*, 173 F.3d 933, 938 (4th Cir. 1999) (intervening before an award was issued when the circumstances were "so egregiously unfair as to constitute a complete default of [the employer's] contractual obligation").

Finally, even if this motion presented a more compelling case of bias, federal policy favoring arbitration would weigh heavily in favor of non-intervention. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or . . . a defense to arbitrability."); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (directing district courts to "exercise the utmost restraint and to tread gingerly before intruding upon the arbitral process") (citations omitted). Courts are appropriately concerned that permitting a party to challenge an arbitrator based "merely on the appearance of impropriety" before the proceeding is allowed to unfold will open the floodgates to federal

---

[5] The very article Plaintiff cites as identifying the potential for bias where an arbitrator is also a part owner in the contracting DRO acknowledges that a part-owner arbitrator is not necessarily "incapable of serving as an entirely unbiased neutral." *See* William Schmelter, *Setting the Standard for "Neutral" Arbitrators: The Risk of Evident Partiality and the Impact of Monster Energy v. City Beverages*, 61 Santa Clara L. Rev. 839, 861-62 (2021). Instead, as Defendant points out, Schmelter's article focused on the problem of the disclosure and *withholding* of such information. *Id.* Here, Judge Rueter promptly disclosed his ownership within a week of obtaining it.

[6] Indeed, these circumstances might not meet the FAA standard for vacating an award based on an arbitrator's "evident partiality," which requires something "powerfully suggestive of bias." *See Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994) (defining the FAA's "evident partiality" standard); *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 252 (3d Cir. 2013) (applying the FAA's "evident partiality" standard).

litigation, "vitiat[ing] the very purpose for which arbitration was created." *See Crim v. Pepperidge Farm, Inc.*, 32 F. Supp. 2d 326, 330 (D. Md. 1999); *Ins. Co. of N. Am.*, 1998 WL 103305, at *2. The more prudent course is to let the arbitration process continue. If Plaintiff still wishes to assert a challenge after an award has been issued, he will have adequately preserved it and be able to do so then. *See Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 147-50 (3d Cir. 2015).

### B. Although JAMS should have deferred arbitration pending a judicial ruling under its own guidelines, the issue is now moot.

In addition, Plaintiff argues that JAMS' refusal to defer arbitration pending judicial review of his purported enforcement claims did not comply with JAMS' Minimum Standards of Procedural Fairness. I agree. The Minimum Standards require that:

> If a party contests the enforceability of a pre-dispute arbitration agreement that was required as a condition of employment, and if compliance with the Minimum Standards is in question, JAMS *will*, if given notice of the dispute, defer administering the arbitration for a reasonable period of time to allow the contesting party to seek a judicial ruling on the issue.

Pl.'s Ex. 5, ECF 10-3 at 9 (emphasis added).

JAMS, should have deferred administration of the arbitration while Plaintiff "contest[ed] the enforceability of a pre-dispute arbitration agreement." *Id.* As JAMS' guidelines recognize, it is not for JAMS to determine whether a particular arbitration is enforceable. *See id.* ("JAMS does not take a position on the enforceability of condition-of-employment arbitration clauses.").

The rights conferred by federal statutes such as the ADA are of great importance, and vast numbers of such cases are now resolved through private arbitration. Just as courts have reason to be concerned about interference with the federal policy favoring arbitration, they have equal reason to be concerned when DROs violate the protocols they tout as protecting employee rights. I view JAMS' refusal to defer here as disturbing. Given my conclusions above, the issue is now

effectively moot, but if such conduct is repeated it might well provide a basis for vacating a stay of proceedings in the district court. If federal courts are to defer to private arbitration, they must have confidence that procedural safeguards are scrupulously followed.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to vacate is denied. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge